LAW OFFICE OF SANDRA D. PARKER
110 East 59th Street, 22nd Floor
New York, NY 10022
(212) 317-2883
Sandra D. Parker
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
JERRY ROCCO,

                              Plaintiff,

                -against-

NEW YORK STATE COURT OFFICERS
ASSOCIATION,

                              Defendant.
------------------------------------------------------------x

COMPLAINT AND
JURY DEMAND

23 CV 10973

        Plaintiff, Jerry Rocco, for his Complaint against the Defendant New York State

Court Officers Association, respectfully alleges as follows:

<u>JURISDICTION AND VENUE</u>

        1.        This is an action for declaratory judgment, injunctive relief and damages

instituted against the Defendant New York State Court Officers Association, for

discrimination and harassment, based on Plaintiff's perceived mental and emotional

impairment, Defendant labeling and treating Plaintiff as the alleged "resident psycho," and

based on Plaintiff's mental impairment of severe depression, pursuant to the American with

Disabilities Act, (as amended), 42 U.S.C. §§ 12101 *et seq.* (the ADA).

1

2.      Defendant further created and maintained a hostile environment in which Plaintiff was forced to work, based on his perceived mental condition and the mental impairment of severe depression, which continued unabated, thereby forcing Plaintiff to leave his employment.

3.      Defendant among other things undertook actions and engaged in conduct that highlighted and brought unwarranted attention to Plaintiff's mental impairment and perceived mental impairment.

4.      Defendant among other things undertook actions and engaged in conduct, that caused and condoned New York State Unified Court System, Office of Court Administration (UCS) and employees of UCS to discriminate against Plaintiff.

5.      Defendant among other things undertook actions and engaged in conduct, that condoned and continued the discriminatory treatment to which Plaintiff was subjected while employed with UCS.

6.      Plaintiff further sues Defendant for tortious inference with Plaintiff's business relations with UCS.

7.      Jurisdiction over the subject matter of this Complaint is conferred on this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  This Court's pendent jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a). Plaintiff further invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Jurisdiction also is conferred on this Court pursuant to 28 U.S.C. § 1332, in

that the matter in controversy is between citizens of different states and exceeds the sum of

value of $75,000.00 exclusive of interest and costs.

9.      The venue of this action is properly placed in the Southern District of New

York, pursuant to 28 U.S.C. § 1391(b).

10.     Plaintiff has satisfied the procedural requirements of the ADA, prior to

commencement of this action.

11.     On or about September 22, 2022 Plaintiff filed charges with the New York

State Division of Human Rights and the Equal Employment Opportunity Commission

(EEOC), alleging that Defendant NYSCOA, subjected him to discriminatory treatment and

harassment, including subjecting him to a hostile work environment, based on the perceived

mental condition that Plaintiff possessed dangerous, violent and vicious propensities,

including the propensity to engage in violent acts against others, and based on Plaintiff's

mental impairment of severe depression.

12.     On or about September 21, 2023,  the EEOC issued Plaintiff a Notice of

Right to Sue.

13.     Plaintiff commenced this action within 90 days of receipt of said Notice of

Right to Sue

<u>PARTIES</u>

14.     Plaintiff is a former employee of the UCS.

15.     Beginning in or about 2002, UCS employed Plaintiff as a correct officer.

16.    Plaintiff continued in his employment as a correction officer with UCS until on or about May 2022, when he was forced to leave his employment, due to the discriminatory treatment and harassment to which Defendant subjected him.

17.    At all times relevant herein Plaintiff was a "qualified individual" within the meaning of 42 U.S.C. § 12112.

18.    At all times relevant herein Plaintiff was citizen of the State of New Jersey.

19.    Upon information and belief, at all times relevant herein, Defendant NYSCOA was and continues to be a labor organization, with offices located at 321 Broadway, Suite 600, New York, NY 10007.

20.    Upon information and belief, at all times relevant herein Defendant was a citizen of the State of New York, and/or was incorporated in the State of New York, with its principal place of business located in the State of New York,

21.    At all times relevant herein, NYSCOA was and continues to be a "covered entity" within the meaning of 42 U.S.C. § 12112.

22.    At all times relevant herein, Defendant NYSCOA was and continues to be the authorized labor representative of the court officers employed with the UCS.

23.    At all times relevant herein, Defendant NYSCOA was and continues to be the collective bargaining representative of the court officers employed with the UCS.

24.    All times relevant herein Plaintiff was a member and continues to be a member of the Defendant NYSCOA.

25.    At all times relevant herein, Dennis Quirk (Quirk) was the President of the NYSCOA.

26.    As President of NYSCOA, Quirk exercised authority over, and in conjunction with UCS determined, the terms and conditions of employment for the correction officers employed with UCS, including Plaintiff.

27.    During Plaintiff's employment with UCS, Defendant and in particular Quirk has acted a Plaintiff's  joint employer with  UCS.

28.    During Plaintiff's employment with UCS, Defendant and in particular Quirk, has acted jointly with UCS to determine and set the terms and conditions of Plaintiff's employment and the employment of other court officers working for UCS.

29.    Among other things, UCS and Defendant jointly made the determination whether a court officer should be relieved of his firearm, including when and under what circumstances the firearm may be returned to the court officer for use in executing the court officer's duties.

30.    During Plaintiff's employment, UCS did not undertake any action with respect to the working terms and conditions of the court officers, without discussing it with Defendant NYSCOA and in particular Quirk, and without obtaining NYSCOA's approval for the contemplated action.

31.    Among other things, UCS and Defendant jointly determined where a court officer should be assigned, including reviewing and determining the court officers' requests

5

for transfers or reassignments to specific work sites, with Defendant and in particular Quirk possessing the authority to make the final decision regarding said transfers or reassignments.

FACTS

32.    The duties of a court officer includes providing security and safety to persons who use the New York State Court system.

33.    In order to provide security and safety to court users, UCS among other things provides the court officers with firearms, for use in performing their duties.

34.    During Plaintiff's employment with UCS, UCS assigned Plaintiff a firearm for use in performing his duties as a court officer.

35.    During Plaintiff's tenure as a court officer, he performed his duties in an exemplary manner.

36.    With respect to Plaintiff's knowledge regarding the rules related to the firearm he was assigned, and the use of his firearm, on every performance evaluation UCS rated Plaintiff 's knowledge and use of said firearm, as satisfactory.

37.    Upon information and belief, UCS established the Worklife Assistance Program, to among other things, assist UCS employees who suffer from mental or emotional distress, who are mental impaired, and who are substance abusers.

38.    On or about March 4, 2019, UCS in response to a unsubstantiated allegations regarding Plaintiff's conduct, while off duty, demanded that Plaintiff relinquish his firearm and directed that he report to UCS's Worklife Assistance Program.

39.    UCS undertook the foregoing actions based on the unsubstantiated report it received on or about March 4, 2019, regarding Plaintiff's off duty conduct and based on UCS's perception that Plaintiff was allegedly mentally unstable, allegedly possessed violent propensities and allegedly posed a danger to himself and/or others.

40.    Following the foregoing March 4, 2019 incident, Plaintiff took a leave of absence.

41.    In or about July 2019, Plaintiff was diagnosed as suffering from severe depression.

42.    Plaintiff undertook a course of treatment for his condition, which included therapy and medication.

43.    Plaintiff continues to receive treatment for his severe depression.

44.    In or about July 2019, Plaintiff reported to work from the leave of absence.

45.    In or about July 2019, Plaintiff informed UCS of the diagnosis of and treatment he was receiving for severe depression.

46.    Plaintiff's severe depression did not interfere with or otherwise prevent Plaintiff from performing the essential functions of a court officer.

47.    Following the diagnosis of severe depressions and while receiving treatment for his condition, Plaintiff continued to perform the duties of a court officer in a satisfactory manner.

48.    Upon reporting to work, in or about July 2019, UCS required Plaintiff to

undergo a psychological examination, before permitting him to return to work.

49.    Following completion of the UCS mandated psychological examination, UCS permitted Plaintiff to assume the full duties of a court officer.

50.    However, UCS failed and refused to return to Plaintiff the firearm he had been issued, and which on or about March 4, 2019 UCS confiscated.

51.    UCS's confiscation of Plaintiff's firearm on or about March 4, 2019 was in effect a permanent ban on Plaintiff's use and possession of a firearm, to perform his duties, and for use under any and all other circumstances.

52.    The permanent removal of Plaintiff's firearm caused Plaintiff great humiliating and embarrassment.

53.    The permanent removal of Plaintiff's firearm further prevented Plaintiff from working overtime and earning additional income.

54.    Defendant NYSCOA, and in particular Quirk had knowledge of the unsubstantiated allegations regarding Plaintiff's alleged off-duty conduct, and UCS's removal of Plaintiff's firearm from his possession.

55.    Defendant NYSCOA, and in particular Quirk had knowledge of Plaintiff's diagnosis of severe depression, and the treatment he was receiving for the condition.

56.    Defendant NYSCOA, and in particular Quirk shared and publicized the foregoing information regarding Plaintiff to members of NYSCOA and to other court officers and employees of UCS.

57.    Defendant NYSCOA and in particular Quirk, working with UCS made the determination that Plaintiff's firearm should be permanently removed.

58.    Defendant NYSCOA and in particular Quirk, failed to take any action to assist Plaintiff in lifting the permanent ban on his possession and use of a firearm while at work, but instead took the position that the permanent ban should remain in place.

59.    Instead of taking action or otherwise assisting Plaintiff to secure the return of his firearm, Defendant NYSCOA and in particular Quirk, disparaged Plaintiff by among other things repeatedly referring to Plaintiff as "out of control," as the "resident psycho," and constantly harassing Plaintiff about his medication or about taking his medication for the severe depression.

60.    Defendant NYSCOA and in particular Quirk, made intrusive, repeated and constant inquiries of Plaintiff and other correction officers, regarding Plaintiff's medication, including whether he was taking his medication for severe depression.

61.    As a result of the foregoing conduct of Defendant NYSCOA and in particular Quirk, UCS employees, including Plaintiff's supervisors freely referred to Plaintiff as the "resident psycho," and treated him accordingly.

62.    Plaintiff's conduct and actions were subject to severe and punitive scrutiny.

63.    The foregoing conduct of Defendant NYSCOA and in particular Quirk began in or about July 2019 and continued unabated, creating a hostile work environment in which Plaintiff was forced to work, and fostering and encouraging the discrimination to

which Plaintiff was being subjected because of his perceived mental condition and his severe depression.

64.    In accordance with Defendant's perception of Plaintiff as the "resident psycho" and with knowledge of his severe depression diagnosis and treatment, Defendant and in particular Quirk, working in tandem with UCS, permanently barred Plaintiff from returning to work at the 100 Centre Street Courthouse, where he had worked for approximately twenty years.

65.    During his tenure at the 100 Centre Street Courthouse, Plaintiff had developed a strong working relationship with the other court officers and court personnel assigned to work at that courthouse.

66.    During his tenure at the 100 Centre Street Courthouse, Plaintiff was treated with respect and as a  valuable member of the team.

67.    Despite Plaintiff's repeated requests to be assigned to the 100 Centre Street Courthouse, upon his return from medical leave in or about July 2019, Defendant and in particular Quirk, refused to grant Plaintiff's request.

68.    Plaintiff instead was assigned to new work sites, where he was viewed and treated as the "resident psycho," and where he was treated by UCS, employees of UCS and Defendant NYSCOA, in particular Quirk, with hostility and extreme wariness.

69.    Despite Plaintiff's repeated requests that he be assigned to the 100 Centre Street Courthouse or alternatively a courthouse located in New York County, UCS with the

knowledge and acquiescence of the Defendant and in particular Quirk, repeatedly denied

Plaintiff's requests.

71.     Defendant and in particular Quirk, not only exerted control over Plaintiff's

work environment, after sharing information regarding Plaintiff's mental impairment with

other members Defendant NYSCOA, he directed them to  visit Plaintiff at his home to

conduct an alleged "wellness check."

71.     On or about  May 28, 2022 while Plaintiff was off from work, Defendant

NYSCOA and in particular Quirk, called Plaintiff at his home.

72.     During the May 28, 2022 telephone call, Quirk threatened Plaintiff with being

transferred from his present work site to the Bronx, with having to undergo another

psychological evaluation, and with being fired.

73.     Defendant and Quirk in particular, made the call after an incident Plaintiff

 had with his supervisor, regarding Plaintiff's disagreement with the supervisor's actions.

74.     Defendant and in particular Quirk, further told Plaintiff on May 28, 2022 that

he had dispatched to Plaintiff's home, two of Defendant NYSCOA's  delegates to give

Plaintiff a "wellness check."

75.     Thereafter, Steve  Mikos (Mikos) and Thomas Hinckey (Hinckey), two

NYSCOA delegates appeared at Plaintiff's home, proceeded to ask Plaintiff how he was

doing and telling Plaintiff he was going to be transferred to the Bronx.

76.     Mikos and Hinckey further stated that Plaintiff would never work in the

Manhattan courthouse because Defendant and UCS believed Plaintiff was capable of and/or may engage in acts of violence.

77.     Thereafter, on or about March 2, 2022, UCS issued a memorandum stating that Plaintiff was being transferred to the Bronx, one of the worst assignments in the UCS system.

78.     After taking a leave of absence Plaintiff retired from his position with UCS.

<u>COUNT I</u>

79.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 78 of this Complaint, with the same force and effect as if set forth herein.

80.     Defendant discriminated against Plaintiff on the basis on his perceived mental impairment and his mental impairment of severe depression, in violation of 42 U.S.C. §§ 12101 *et seq.*

81.     As a proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, career advancement, and other employment benefits.

82.     As a proximate result of Defendant's disability discrimination, Plaintiff has suffered and continues to suffer impairment and damage to his good name and reputation.

83.     As a proximate result of Defendant's disability discrimination, Plaintiff has suffered and continues to suffer severe lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

84.     The conduct of the Defendant was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's  protected rights, entitling Plaintiff to an award of punitive damages.

<u>COUNT II</u>

85.      Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 78 of this Complaint, with the same force and effect as if set forth herein.

86.     Defendant subjected Plaintiff to harassment and created a hostile environment in which Plaintiff was forced to work, in violation of 42 U.S.C. §§ 12101 *et seq*.

87.     As a proximate result of Defendant's conduct Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, career advancement, and other employment benefits.

88.     As a proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer impairment and damage to his good name and reputation.

89.     As a proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer severe lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

90.     The conduct of the Defendant was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's  protected rights, entitling Plaintiff to an award of punitive damages.

## COUNT III

91.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 78, paragraphs 80 through 84, and paragraphs 86 through 90 of this Complaint, with the same force and effect as if set forth herein.

92.     Defendant's conduct forced Plaintiff to leave his position with UCS, in violation of 42 U.S.C. §§ 12101 *et seq.*

93.     As a proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, career advancement, and other employment benefits.

94.     As a proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer impairment and damage to his good name and reputation.

95.     As a proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer severe lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

96.     The conduct of the Defendant was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT IV

97.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 78, paragraphs 86 through 84, and paragraphs 86 through 90 of this Complaint,

14

with the same force and effect as if set forth herein.

98.    Plaintiff had a business relations with UCS in that UCS hired and paid Plaintiff for rendering certain services.

99.    Defendant was aware of said business relations.

100.    Defendant intentionally interfered with said business relations.

101.    Defendant's conduct of intentionally interfering with said business relations was done solely as a result of malice toward Plaintiff.

102.    Defendant's conduct resulted in injury to Plaintiff, including the loss of and termination of said business relations.

103.    As a proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, career advancement, and other benefits.

104.    As a proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer impairment and damage to his good name and reputation.

105.    As a proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer severe lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

WHEREFORE, Plaintiff prays that this Court grant him judgment containing the following relief:

1.    A declaration that the acts and practices complained of herein are in violation

of 42 U.S.C. §§ 12101 *et seq.,* and a declaration that Defendant interfered with Plaintiff's business relations with UCS.

2.      An order prohibiting Defendant from continuing or maintaining the policy, practice and/or custom of denying job benefits and opportunities to employees on the basis of perceived mental impairments and on the basis of the mental impairment of severe depression.

3.      An award to Plaintiff of actual damages in an amount to be determined at trial for loss wages, benefits and promotional opportunities, including an award of front pay, compensating Plaintiff for loss of future salary and benefits, and for other incidental damages.

4.      An award of damages in an amount to be determined at trial to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury.

5.      An award of punitive damages in an amount to be determined at trial.

6.      An order enjoining Defendant from engaging the wrongful acts and practices complained of herein.

7.      An award of pre-judgment and post-judgment interest.

8.      An award of reasonable attorney's fees and costs of this action.

9.      An award of such other and further relief, as this Court may deem just and proper.

Pursuant to Fed. R. Civ. Proc. 38, Plaintiff demands a trial by jury of all issues of fact

in this action.

Dated:      New York, New York
            December 19, 2023

                            LAW OFFICE OF SANDRA D. PARKER

                            By:/s/ Sandra D. Parker
                                Sandra D. Parker
                                110 East 59th Street, 22nd Floor
                                New York, NY 10022
                                212-317-2883
                                Attorney for Plaintiff
                                parkefirm@aol.com

17